IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00409-MSK-MJW

SHARON KERR, an individual; and
COLORADO CROSS-DISABILITY COALITION, a Colorado Non-profit Corporation,

      Plaintiffs,

v.

THE HEATHER GARDENS ASSOCIATION, a Colorado Corporation; and
HEATHER GARDENS METROPOLITAN DISTRICT, a Colorado Metropolitan District,

      Defendants.

---

## OPINION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on the Plaintiffs' Partial Motion for Summary Judgment **(#45)**, to which Defendant Heather Gardens Metropolitan District's (the "District") **(#52)** and Defendant Heather Gardens Association (the "Association") **(#54)** responded, and the Plaintiffs replied **(#55, 61)**; and the District's Motion for Summary Judgment **(#43)** and brief in support **(#44)**, to which the Plaintiffs responded **(#51)**, and the District replied **(#53)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II.  Issue Presented

This action is based on  allegations that Ms. Kerr was excluded from active participation in certain events and activities in her residential community based on her hearing disability.  She contends that the Defendants failed to provide reasonable accommodations allowing her to

effectively communicate during the events.

In their Partial Motion for Summary Judgment, the Plaintiffs seek summary judgment against the Association on claims brought under the Fair Housing Act ("FHA") and Title III of the Americans with Disabilities Act ("ADA"), and against the District on their claim under Title II of the ADA. As to each of the three claims, the Plaintiffs argue that there is no dispute as to any material fact with regard to any elements of the claims or as to the Defendants' assertion of the affirmative defense of undue burden. The Association responds that there are triable issues of fact regarding both the claims and the affirmative defense. The District responds that it is entitled to summary judgment as a matter of law because the claim against them is not actionable under Title II because they do not provide the services from which Ms. Kerr was allegedly excluded.

In the District's Motion for Summary Judgment, the District argues that there is no actionable claim against it because it was not the provider of any of the programs or services for which Ms. Kerr sought an accommodation. It argues that pursuant to contract, the Association provides and arranges all of the meetings and community events at issue in this lawsuit. The Plaintiffs respond that the District's ownership of the Community Center, where the meetings and events are held, is sufficient to hold the District liable for the discrimination that Ms. Kerr has suffered.

### III.   Material Facts

The Court has reviewed all of the parties' submissions. The material, undisputed facts

are as follows.[1]

Ms. Kerr resides at Heather Gardens, a senior living facility. She is hearing impaired, and the parties agree that her impairment entitles her to protection under both the FHA and the ADA.[2] Ms. Kerr requires some form of accommodation to participate in certain community events, although the form of accommodation necessary to allow Ms. Kerr to actively participate in an event is disputed. Ms. Kerr contends that she needs a sign language interpreter or Computer Aided Realtime Translation ("CART"); the Association maintains that she can participate in certain activities with no accommodation, and at others with the assistance of an amplification system.

The District is the governing Metropolitan District where Heather Gardens is located. The Association is the homeowner's association for Heather Gardens. The Management Agreement between the District and Association states:

> WHEREAS, the District and the Association are desirous of entering into an Agreement whereby the Association performs all of the duties of the District except those duties required by law to be retained by the District (e.g. preparation of budgets, levying of taxes, payment of debt, etc.) and to manage, operate, maintain, upgrade, rehabilitate, retire, replace and otherwise deal with the Properties.

The Agreement goes on to define the specific rights and duties of both the District and the Association, including that the Association make all operational decisions relating to the use of

---

[1] Because these are cross motions for summary judgment, the Court identifies the disputed facts, but construes them in the light most favorable to the nonmoving party.

[2] Although the FHA uses the term "handicap" and the ADA uses the term "disability," the two terms are equivalent. *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 n.5 (9th Cir. 2008); *compare* 42 U.S.C. § 3602(h) (definition of "handicapped" individual in the FHA), *with* 42 U.S.C. § 12102 (definition of "disability" in the ADA). For ease of reference, the Court uses the term "disability."

the District's properties. The parties do not appear to dispute that the Association is the sole entity engaged in managing and operating Heather Gardens, including the community properties owned by the District. This includes conducting Association board meetings and arranging for events such as lectures and other programs and the Community Center—the events from which Ms. Kerr alleges she was excluded.

Beginning in March 2007, Ms. Kerr sought to have a sign language interpreter or CART available during board meetings and other Community Center events. She made several requests to the Association for such assistance.[3] The Association purchased a portable amplification system, which provides amplified sound to the user.[4] Ms. Kerr used this system at at least one event, but reported that she heard static and radio interference, and sometimes missed information. Despite Ms. Kerr's problems with the portable amplification system, the Association declined to schedule an interpreter or CART for any other event. It did, however, agree to provide an interpreter at annual board meetings. As to monthly board meetings, the Plaintiffs contend that the Association declined to provide an interpreter, but the Association contends that it offered an interpreter with certain conditions—that Ms. Kerr notify the Association of her intent to attend the meeting at least 72 hours before the meeting and that if she did not attend, that she pay for the cost of the interpreter.

Based on the Association's failure to provide an interpreter or CART for Ms. Kerr's

---

[3] Although Ms. Kerr's requests were generally directed to the Association and its employees, two requests were sent to the District's attorney. The District responded that Ms. Kerr should direct her requests to the Association because the Association arranged the events.

[4] Although it is unclear if the system was purchased based on Ms. Kerr's requests or for some other reason, there is no dispute that the system was available for Ms. Kerr's use at the Community Center.

benefit at meetings and community events, the Plaintiffs assert four claims for relief:

(1) Violation of the FHA against the Association for failure to provide accommodation;

(2) Violation of Title II[5] of the ADA against the District for failure to provide accommodation;

(3) Violation of Title III of the ADA against the Association for failure to provide accommodation; (4) Violation of Title IV of the ADA against the Association for retaliation for requesting accommodation.

The Association asserts as an affirmative defense,[6] that to provide a sign language interpreter or CART at every event and at every board meeting would create an undue financial and administrative burden. The Plaintiffs agree that a financial and administrative burden would be created, but contend that it would not be undue.

## IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

---

[5] Title II of the ADA addresses discrimination by public services and entities while Title III addresses discrimination by places of public accommodation. *See EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192, 1195 (10th Cir. 2003); *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1006 (10th Cir. 2001).

[6] The Association asserted a number of additional affirmative defenses in its Answer **(#11)**, but the only one relevant to the motions before the Court is that of undue burden.

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

When the movant has the burden of proof on a claim or defense, the movant must

establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R.

Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters

judgment.

When the moving party does not have the burden of proof at trial, it must point to an

absence of sufficient evidence to establish the claim or defense that the non-movant is obligated

to prove.  If the respondent comes forward with sufficient competent evidence to establish a

*prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient

competent evidence to establish its claim or defense, the claim or defense must be dismissed as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## V.  Analysis

For analytical purposes, the Court begins with the Plaintiffs' claim against the

Association pursuant to Title III of the ADA.

### A.      Title III Claim against the Association (Claim 3)

Claim 3 asserts that the Association violated Title III of the ADA by not providing an

interpreter or CART for Ms. Kerr for board meetings and events at the Community Center,

therefore depriving her of the ability to effectively communicate in order to participate.  Title III

of the ADA generally provides that:

> No individual shall be discriminated against on the basis of a disability in the full and
> equal enjoyment of the goods, services, facilities, privileges, advantages, or
> accommodations of any place of public accommodation by any person who owns,
> leases (or leases to), or operates a place of public accommodation.

*See* 42 U.S.C. § 12182(a).  This section implicitly requires a place of public accommodation to

provide reasonable accommodation for those with a disability, including auxiliary aids and

services, so that such individuals can participate in or benefit from the goods, services, facilities,

privileges, advantages, or accommodations being provided.  There is, however, a limitation on

this obligation;  that is where the accommodation would result in an undue burden, *i.e.*,

significant difficulty or expense.  *See id.* § 12182(b)(2)(iii); 28 C.F.R. § 36.303(a).  To comply

with Title III, the auxiliary aids or services provided must ensure effective communication with

individuals with disabilities.  *See* 28 C.F.R. § 36.303(c).  The term "effective communication" is

not expressly defined in the statute or the implementing regulations, but the appendix to the

regulations indicates that to be effective, communication with the disabled individual must be as

effective as that with a non-disabled individual.  *See* 28 C.F.R., Appendix B to Part 36.  Use of

the most advanced technology is not required, however, as long as the accommodation selected

results in effective communication.  *See id.*

To demonstrate that the Association violated § 12182 of Title III, the Plaintiffs must demonstrate that (1) Ms. Kerr is a qualified individual with a disability; (2) the Association owns, leases, or operates, a place of public accommodation; (3) the Association knew or should have known about Ms. Kerr's disability; (4) certain reasonable accommodations in the form of auxiliary aids or services were necessary for Ms. Kerr to have effective communication such that she could participate in or benefit from the meetings and community events offered by the Association; and (5) the Association failed to provide the necessary accommodation, thereby depriving Ms. Kerr of effective communication at community events.  *See id.* § 12182(a)–(b); *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008); *Dahlberg v. Avis Rent a Car Sys.*, 92 F.Supp.2d 1091, 1100 (D. Colo. 2000).  If the Plaintiffs come forward with sufficient, competent evidence to demonstrate these elements, the Association can avoid summary judgment either by establishing that genuine issues of material fact remain on some element of the Plaintiffs' claim, *see Bacchus Indus.*, 939 F.2d at 891, or by coming forward with sufficient, competent evidence to demonstrate an affirmative defense, *see Colo. Cross Disability Coal. V. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1002–03 (10th Cir. 2001).[7]

The Association does not dispute the sufficiency of evidence for a *prima facie* case; instead, it argues that there are genuine disputes as to material issues of fact remaining with respect to both the claim itself and as to the affirmative defense.

Among its arguments, the Association contends that there is a genuine dispute as to

---

[7] At issue is whether the requested accommodation would subject the Association to an undue burden.  *See* 42 U.S.C. § 12182(b)(2)(iii); 28 C.F.R. § 36.303(a).

whether Ms. Kerr's disability required that a sign language interpreter be present in order to participate in the meetings and community events (element 3) and whether she was denied a necessary accommodation when she was provided with an amplification system but not a sign language interpreter or CART (element 4). The factual issue is what assistance is necessary to allow Ms. Kerr with the means to effectively communicate.[8]

In support of its contention that a sign language interpreter or CART is not necessary, the Association offers the duly recorded minutes from a monthly board meeting when Ms. Kerr, without the benefit of a sign language interpreter or CART, was able to convey her concerns relating to smoke detectors[9]. As to Ms. Kerr's ability to understand information, the Association provides a doctor's report that states that a portable sound system, used in conjunction with Ms. Kerr's hearing aids, would be sufficient to allow her to hear lectures and other speaking events (such as board meetings) approximately as well as a non-hearing disabled individual does in one-on-one situations. Finally, it presents Ms. Kerr's deposition testimony that when she used the portable amplification system during a lecture, she was able to hear the speaker and ask questions despite radio and static interference.

The Court finds that this evidence is sufficient to create a genuine dispute as to whether a sign language interpreter or CART is necessary for Ms. Kerr to effectively communicate at

---

[8] No party distinguishes between the nature of communication or participation necessary for community events as compared to attendance at board meetings; therefore, the Court will assume that both the degree of communication and the appropriate means of accomplishing it remains uniform.

[9] Arguably, this would suggest that Ms. Kerr was able to convey information to the board either during or prior to a meeting, but it does not address the question of whether she was able to hear the board's response to concerns or answer any questions that they might pose.

events or association board meetings.  Thus a trial is necessary.  That being so, there is no need for the Court to determine whether there are other issues of material fact to be determined with regard to this claim or the associated affirmative defense.  Accordingly, the request for summary judgment on Claim 3 is **denied**.

### B.     FHA Claim Against the Association (Claim 1)

Claim 1 asserts that the Association violated the FHA by engaging in the same conduct that they allege violated Title III of the ADA—failing to provide reasonable accommodations to Ms. Kerr for her participation in meetings and community events.  The FHA seeks to provide fair housing throughout the United States.  *See* 42 U.S.C. § 3601.  In furtherance of this goal, the FHA prohibits, *inter alia*, discrimination against individuals with disabilities in the provision of services or facilities in connection with a dwelling.  *See* 42 U.S.C. § 3604(f)(2).  Such discrimination includes a refusal to make reasonable accommodations in the rules, policies, practices, or services when the accommodations are necessary to afford the individual with an equal opportunity to use and enjoy the dwelling.  *See id.* § 3604(f)(3)(B).  The dwelling includes the dwelling itself and the public and common use areas.  *See* 24 C.F.R. § 100.204(a).

To demonstrate a claim under the FHA, Ms. Kerr must demonstrate that (1) she is an individual with a disability; (2) the Association knew or should have known about Ms. Kerr's disability; (3) certain reasonable accommodations were necessary for Ms. Kerr to use and enjoy her dwelling or the facilities or common areas of Heather Gardens; and (4) the Association failed to provide the necessary accommodations.  *See* 42 U.S.C. § 3604(f); *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997).  The Association may defend an FHA claim either on the merits or by proving  undue burden as an affirmative defense.  *See*

*Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 604 (4th Cir. 1997) (citing *Se. Cmty. College v. Davis*, 442 U.S. 397, 412 (1979) and *Alexander v. Choate*, 469 U.S. 287, 301 n.20 (1985)).

The elements of this claim are similar to the elements of a Title III claim. The facts underlying both claims are essentially the same, and with regard to this claims, there exists the same material factual dispute as to the type and extent of accommodation required to address Ms. Kerr's disability. Accordingly, the Plaintiffs' motion is **denied** as to Claim 1.

## C.     Title II Claim against the District (Claim 2)

Based upon the same factual scenario, the Plaintiffs assert a single claim against the District for violation of Title II of the ADA. Title II of the ADA prohibits public entities from excluding individuals with disabilities from its services, programs, and activities.

To maintain a claim under Title II, Ms. Kerr must demonstrate that (1) she is a qualified individual with a disability; (2) the District knew or should have known about her disability; (3) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities; and (4) such exclusion or denial of benefits was by reason of her disability. *See Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

With respect to this claim, the parties have filed cross-motions for summary judgment. Cross motions present peculiar problems because parties often frame their arguments on the assumption that the cross motions will be considered together. The Tenth Circuit, however, has repeatedly directed that cross-motions for summary judgment be determined independently. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell*

*Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). This is because, as discussed *supra*, a determination of whether there is a genuine dispute as to a material fact turns upon which party has the burden of proof, the standard of proof, and whether the evidence submitted is adequate under the relevant standard of proof. *See In re Ribozyme Pharms., Inc., Sec. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002). Pursuant to this dictate, the Court analyzes the parties' Motions for Summary Judgment on the Title II claim against the District, separately. For analytical purposes, it turns first to the District's Motion.

In conjunction with its Motion for Summary Judgment, the District does not contest the Plaintiffs' ability to demonstrate that it knew that Ms. Kerr is a qualified individual with a disability or that she was excluded from the services, programs, or activities at issue based on that disability. Instead, it focuses on whether the Plaintiffs can demonstrate that the District provided the services, programs, or activities. It argues that it delegated the provision of services, programs and activities to the Association, and therefore, it is not liable under Title II for the actions that the Association takes in performing these duties.[10]

The District essentially presents a legal issue—when all of the subject services, programs and activities were provided by the Association, acting separate and apart from the District, does the District remain obligated under Title II of the ADA? The District contends that in delegation of the responsibility for services, programs and activities to the Association, it is relieved of

---

[10] Here, there is no dispute that, regardless of the District's delegation to the Association, the Association is not liable under Title II. Title II applies only to public entities, defined as any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation. *See* 42 U.S.C. § 12131(a). The Association is not a public entity.

further obligation under the ADA. The Plaintiffs contend that, notwithstanding the District's delegation of authority to the Association, as the public entity that owns the Community Center, it remains obligated to ensure that Ms. Kerr was not excluded from the services, programs and activities provided there.

Title II prohibits a public entity from excluding individuals with disabilities from its services, programs, or activities, based on the disability. *See* 42 U.S.C. § 12132. The statute, however, does not expressly address whether a public entity that authorizes a third party to provide services, programs or activities at a venue owned by the public entity, remains responsible for compliance with the ADA. The parties have not directed the Court to any Tenth Circuit authority that addresses this issue, nor has the Court been able to find instruction from the Tenth Circuit in interpreting this statutory provision.

Accordingly, the Court turns to the analytical framework set forth in *Chevron, U.S.A. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–44 (1984), for statutory interpretation. *See Pharmanex v. Shalala*, 221 F.3d 1151, 1154–55 (10th Cir. 2000). Under *Chevron*, the first question is whether Congress has directly spoken on the issue. If the intent of Congress is clear, then the court must give effect to the unambiguous intent of Congress. If, however, the statute is ambiguous or silent on the issue, a court may not simply impose its own construction of the statute, even with guidance from other courts. Rather, a court must look to agency interpretations for guidance. When Congress directly instructs an agency to promulgate rules and regulations for implementation of a statute, the regulation or interpretation is afforded controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute.

In this case, Title II explicitly directs the Attorney General to promulgate regulations

implementing the statute.  *See* 42 U.S.C. § 12134(a).  Therefore, the Federal Regulations

implementing Title II, promulgated pursuant to this statutory direction, are entitled to controlling

weight as long as they are a permissible interpretation of the statute, *i.e.*, they are not arbitrary,

capricious or contrary to the statute.  *See Chevron*, 467 U.S. at 844.  The Regulations do not

explicitly address the issue before the Court—whether delegation of all authority to another

entity relieves the public entity of its obligations under Title II.  They do, however, address

whether a public entity is indirectly liable under Title II, providing, in part, that:

> A public entity, in providing any aid, benefit, or service, may not, directly or
> indirectly or through contractual, licensing, or other arrangements, on the basis of
> disability deny a qualified individual with a disability the opportunity to participate
> in or benefit from the aid, benefit, or service.

*See* 28 C.F.R. § 35.130(b)(1)(i).  The appendix to this section of the Regulations explains that:

> All governmental activities of public entities are covered, even if they are carried out
> by contractors.  For example, a State is obligated by title II to ensure that the
> services, programs, and activities of a State park inn operated under contract by a
> private entity are in compliance with title II's requirements.  The private entity
> operating the inn would also be subject to the obligations of public accommodations
> under title III of the Act and the Department's title III regulations at 28 CFR part 36.

*See* 28 CFR, Appendix A to Part 35.

Recalling Title II's brief and general statement that public entities may not discriminate

against individuals with disabilities,[11] there is nothing in the statutory language to suggest that

the Regulations are arbitrary, capricious or contrary to the statute.  Indeed, the language is silent

---

[11]  Title II provides:
Subject to the provisions of this title, no qualified individual with a disability shall,
by reason of such disability, be excluded from participation in or be denied the
benefits of the services, programs, or activities of a public entity, or be subjected to
discrimination by any such entity.
*See* 42 U.S.C. § 12132.

as to whether there can be indirect liability or whether a public entity is only liable for its own

personal conduct.  It is arguable that Congress's decision to decline to specify that public entities

may be indirectly liable for its contracts, while doing so in Title III, indicates Congress's intent

to exclude indirect liability under Title II.  However, as explained by the Ninth Circuit in

*Armstrong v. Schwarzenegger*, __ F.3d __, 2010 WL 3465279, at *4–5 (9th Cir. Sept. 7, 2010),

the legislative history reveals that Congress intended that Title II incorporate the protections

afforded by Title III and that Title II be viewed consistently with the protections afforded by

§ 504 of the Rehabilitation Act.[12]

The House Committee on Education and Labor stated that the purpose of Title II was to

make the prohibition against discrimination in the regulations implementing § 504 of the

Rehabilitation Act applicable to "all programs, activities, and services provided or made

available by state and local governments" regardless of whether they receive financial assistance.

*See* H.R. Rep. 101-485, pt. 2, at *84 (1990).  Moreover, it stated that:

> The Committee has chosen not to list all the types of actions that are included within
> the term "discrimination", as was done in titles I and III, because this title essentially
> simply extends the anti-discrimination prohibition embodied in section 504 [of the
> Rehabilitation Act] to all actions of state and local governments. The Committee
> intends, however, that the forms of discrimination prohibited by [Title II] be identical
> to those set out in the applicable provisions of titles I and III of this legislation.

*See id.*  Similarly, the House Judiciary Committee stated that it intended Title II to "work in the

same manner as Section 504", that the general prohibitions set forth in the Section 504

regulations are applicable to all programs and activities covered by Title II, and that  "Title II

should be read to incorporate provisions of title I and III which are not inconsistent with the

---

[12]  29 U.S.C. § 794.

regulations implementing Section 504 of the Rehabilitation Act of 1973." *See* H.R. Rep. O. 101-485, pt. 3, 51 (1990). The implementing regulations for § 504 of the Rehabilitation Act provide that a recipient of federal financial assistance may not discriminate "directly or through contractual, licensing, or other arrangements, on the basis of a handicap." *See* 28 C.F.R. § 41.51.

Accordingly, the regulations directing that a public entity is liable under Title II for direct conduct as well as indirect conduct, achieved through contracting, licensing, or the like, is not arbitrary, capricious, or manifestly contrary to the statute. Therefore, the regulations are entitled to controlling weight. *See Chevron*, 467 U.S. at 844.

The ADA also directs the Attorney general to develop a plan to render technical assistance explaining the responsibilities of covered entities. *See* 42 U.S.C. § 11206(c). Pursuant to this direction, the Attorney General created the Title II Technical Assistance Manual (the "Manual"). Like the Regulations, the agency's interpretations in the Manual are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (looking to the Justice Department's interpretation in the Title III Technical Assistance Manual for guidance in determining the definition of "disability" under the ADA).

In describing Title II's interaction with Title III, the Manual includes four illustrations of situations in which a public entity is subject to Title II indirectly. The illustrations provide that a public entity is subject to Title II when it (1) contracts with a private company to operate a restaurant in a state park; (2) leases commercial space in a city building to private, for-profit companies while it occupies another portion of the same building; (3) engages in a joint venture with a private entity to build a new sports stadium; and (4) contracts with a private, non-profit

16

corporation to operate group homes for individuals with disabilities. The Manual states that under each of these circumstances the public entity is subject to Title II, and as to examples 1 and 4, the public entity has an affirmative duty to ensure that its contracts are carried out in accordance with Title II. For essentially the same reasons discussed *supra* with respect to the Title II Regulations, there is nothing to indicate that the Manual's interpretation is arbitrary, capricious, or manifestly contrary to the statute and, therefore, it is entitled to deference.

Having determined that both the Regulations and the Manual are entitled to controlling weight in interpreting § 12132, the Court next applies these provisions to the circumstances of this case. Both the Regulations and the Manual suggest that even if a public entity allows others to provide services, programs and activities, the public entity remains obligated to ensure compliance with Title II. The Regulations provide that a public entity is subject to Title II both "directly or indirectly or through contractual, licensing, or other arrangements." As an example of Title II's indirect application, the appendix to the Regulations provide the state park inn example in which a state is held liable for services, programs, or activities provided at an inn, which is run via contract by a private entity. This is analogous to the situation here—the District has contracted with the Association to manage and administer its public duties with respect to Heather Gardens, including the management of the Community Center.[13]

The District argues that the Regulations' statement of indirect liability and state park inn

---

[13] Although there is a factual distinction between the two types of events at issue, *i.e.*, board meetings are held by the Association as part of its own internal governance while community events are arranged by the Association for the benefit of the Heather Gardens' residents, such distinction is not relevant to the issue before the Court. Both types of events are offered pursuant to the Association's authority under the Management Agreement. As such, they are both services, programs, or activities (the board meetings being more akin to a service while the community events being more akin to a program or activity).

example are distinguishable from the facts of this case. It contends that these provisions are based on the public entity's exercise of control over the services, programs or activities and because it does not exercise any control over the services, programs, or activities that the Association offers, the provisions are inapplicable here. However, there is nothing in the language of the Regulations to indicate such a requirement. Rather, the District's contract with the Association appears to be exactly the situation that the Regulations address—a public entity who contracts with a third party to conduct its aid, benefits, or services. The fact that in the state park inn example, the state park may maintain control over other portions of the park in which the inn is located is irrelevant. The key conclusion to be drawn from the state park inn example is that a public entity is liable for violations of Title II in the services, programs, or activities that the private entity-contractor offers at the public facility.

Moreover, the Manual's illustration provide further analogous situations in which the public entity remains liable under Title II despite its delegation of duties. Illustration 1 expands on the Regulations' state park inn example; it provides that a state department of parks is subject to Title II for a restaurant in the state park that is operated under a concession agreement by a private entity. Illustration 2 provides that a public entity who rents a portion of its building to a private, for-profit entity remains subject to Title II as a landlord of the building. Finally, Illustration 4[14] provides that a public entity must ensure that its contract with a private entity to operate a group home is carried out in accordance with Title II. Accordingly, these three examples and, in particular Illustration 4, support a conclusion that a public entity cannot escape

_____

[14] Illustration 3 provides no guidance to the circumstances of this case as it addresses a joint venture between a public and private entity to build a sports stadium.

18

its obligations under Title II by delegating its duties to a private entity. Indeed, in each illustration the public entity remains subject to Title II despite its delegation of authority or duty to another, private entity.[15] Therefore, based on the Regulations and the Manual, the Court concludes that a Title II claim against the District is actionable because District was not absolved of its obligations under Title II by its delegation of authority to the Association.

Notwithstanding the Regulations and the Manual, the District argues that the caselaw on point holds that a public entity is only required to comply with Title II insofar as it takes direct action, *i.e.*, it is not liable for the actions of third parties to which it delegates it duties. The case on which the District relies is *Bacon v. City of Richmond*, a Fourth Circuit case.[16] *See* 475 F.3d 633 (4th Cir. 2007). In *Bacon*, disabled school children and their families in Richmond, Virginia sued the local School Board and the City for failure to provide equal access in school buildings. The School Board entered into a settlement agreement with the plaintiffs in which it agreed to remodel the school buildings to be ADA compliant within five years. This obligation, however, required substantial funding from the City, who was not a part of the settlement agreement. The plaintiffs sought a court order requiring the City to provide funding for the remodels. The district court granted the motion, but the Fourth Circuit reversed, holding that because there had never been a determination of liability as to the City, it could not be held responsible for the remedy. The plaintiffs argued, however, that the determination of liability as to the School

---

[15] The District provides no argument that the Manual or the illustrations are inapplicable here or distinguishable from the facts of this case.

[16] Cases from the Fourth Circuit are not binding on this Court. However, in the absence of any cited or known Tenth Circuit authority on points, the Fourth Circuit may be persuasive authority. Additionally, it is this case upon which the District bases its argument. Accordingly, the Court considers its application here.

Board was also applicable to the City for a variety of reasons including that the City was liable under Title II based on its ownership of the school buildings at issue. The Fourth Circuit rejected this argument, stating that when a city does not exercise any control of the challenged services and activities, Title II would likely be inapplicable. It reasoned that if Congress had wanted to impose liability solely for ownership, it could have done so as evidenced by Title III which imposes liability on those who own, lease, or operate places of public accommodation. The Fourth Circuit determined that the City did not exercise any control over the challenged service, *i.e.*, providing ADA compliant buildings because the City owned the school buildings in name only. Pursuant to state law the School Board was charged with the care, management, and control of school property, not the City.

Although *Bacon's* brief statement as to the applicability of Title II to an entity that owns a building but does not exercise control over the building is superficially supportive of the District's argument, *Bacon* did not address whether ownership of a building was sufficient for liability when the owner contracts with a third party to run or operate the building. In *Bacon*, the School Board and the City were separate entities, both operating by virtue of the state legislature's grant of authority. The City did not contract with the School Board for operation of the school buildings. Accordingly, the Fourth Circuit's statement in *Bacon* that Title II would like not apply to a public entity that merely owned a building but did not exercise any control as to its management or operation was not a statement as to whether a public entity can avoid its obligations under Title II by delegating its authority to a third party. As such it is inapplicable to this case where the District contracted with the Association to operate and manage the Community Center. It is only by virtue of this contract that the District does not have

operational control over the Community Center, not via an inherent inability to exercise control over the building. As discussed *supra*, the Regulations directly address this situation and provide that a public entity may not escape liability simply because it contracts with a third party for operation of its facilities.[17] Accordingly, *Bacon* does undercut the clear mandate of the Regulations that a public entity can be liable under Title II either directly or indirectly through a contractual relationship.[18]

The Court finds more persuasive authority from the Ninth Circuit in *Armstrong v. Schwarzenegger*, __ F.3d __, 2010 WL 3465279 (9th Cir. Sept. 7, 2010). In *Armstrong*, the Ninth Circuit addressed whether the state defendants could be held liable under Title II for the treatment of prisoners at county jails when the state had contracted with the county jails to house prisoners and parolees in a variety of circumstances.[19] The Ninth Circuit determined that the Regulations regarding Title II were valid and entitled to controlling weight under *Chevron*.

---

[17] Additionally, because *Bacon* did not include any discussion of or reference to the Regulations or the Manual, it provides no guidance as to the application of these provisions. Moreover, such omission disregards the controlling weight of these provisions; thereby diluting any persuasiveness of the Fourth Circuit's reasoning.

[18] The cases cited by the District regarding a public entity's administration of a licensing or certification program are factually distinguishable and covered by a different Regulation and, therefore, provide no guidance in this case. *See Reeves v. Queen City Transp.*, 10 F.Supp.2d 1181, 1182–83 (D. Colo. 1998) (addressing the public utilities commission's licensing of a bus) ; *Tyler v. City of Manhatten*, 849 F.Supp. 1429, 1441–42 (D. Kan. 1994) (addressing a claim brought against a city based on the city's issuance of liquor licenses and building permits). Notably, the licensing Regulation expressly excludes the programs or activities of entities that are licensed or certified by the public entity as a basis for liability for the public entity. *See* 28 C.F.R. § 35.130(b)(6). Additionally, *Alford v. City of Cannon Beach*, 2000 WL 33200554, at *56–61 (D. Or. Jan. 17, 2000), is also factually distinguishable because it addressed a city's provision of extra police during private activities not a public entities contractual arrangement with a third party.

[19] For example, between a parole hold and the parole revocation hearing or for in-custody drug treatment programs.

Accordingly, it upheld the district court's determination that the state defendants were required under Title II to ensure that the county jails were ADA compliant. *Armstrong* is analogous to this case—a public entity, who contracts with another entity to perform its duties, remains liable to ensure that the other entity performs those duties in compliance with Title II.

Therefore, based on all of the foregoing, the Court concludes that a claim against the District pursuant to Title II is actionable even though the District delegated all of its authority and duties to the Association. Thus, insofar as the District's Motion seeks dismissal based on its legal argument, the motion is **denied**.

To the extent that the District also challenges the Plaintiffs' ability to factually demonstrate their claim, the Plaintiffs' showing is sufficient to state *prima facie* claim. The Plaintiffs have presented evidence showing that the District is a public entity, that it owns the Community Center, that it contracted with the Association to perform "all of the duties of the District" (with limited exceptions) and manage and operate the Community Center, that Ms. Kerr requested accommodation to participate in or benefit from the services, programs, or activities offered by the Association pursuant to its authority under the contract, and that she was denied such accommodation and, therefore, excluded from participating in or benefitting from the services, programs, or activities. Liability under Title II, however, is ultimately premised, at least in part, on the same conduct by the Association that forms the basis for the Plaintiffs' claims under Title III and the FHA against the Association. As discussed *supra*, there remain genuine issues of fact as certain conduct by the Association. Accordingly, a trial is necessary and the District's Motion is **denied**.

The Court turns next to the Plaintiffs' Motion for Summary Judgment regarding the Title

II claim against the District. Liability on this claim is based, at least partially, on the events at issue in Claims 1 and 3 against the Association. Because the Court determined *supra* that a trial was necessary to resolve those claims, a trial is also needed to resolve this claim. Moreover, because of the symmetry between the facts giving rise to the claims against the Association and the District, there is no utility in determining this claim on summary judgment. Accordingly, the Plaintiffs' Motion for Summary Judgment is **denied** insofar as it addresses Claim 2 against the District.

**IT IS THEREFORE ORDERED** that

(1)     Plaintiffs' Partial Motion for Summary Judgment **(#45)** is **DENIED**.

(2)     Defendant Heather Gardens Metropolitan District's Motion for Summary Judgment **(#43)** is **DENIED**.

Dated this 22nd day of September, 2010

BY THE COURT:

Marcia S. Krieger
United States District Judge
